**KEKOA KAAPU**, Plaintiff–Appellant, v. **ALOHA TOWER DEVELOPMENT CORPORATION**, Defendant–Appellee

NO. 14734

(CIV. NO. 90–0831)

JULY 24, 1991

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY LUM, C.J.

This is an appeal from an order expunging a lis pendens. Appellant, Kekoa Kaapu, has no legitimate claim or interest in the

land, and, therefore, has no standing to file a lis pendens. We affirm.

## I.

Appellant contested the procedures used by Aloha Tower Development Corporation, appellee, in a hearing to select a developer for the Aloha Tower project. The contest was based on lack of proper notice, failure to make the hearing a contested hearing, and also on the assertion that the Sunshine law had been violated, in that the public was not made aware of the various plans and proposals which were being offered by the competing developers.

Appellant's lawsuit asked for injunctive and other equitable relief, including a request to void any actions or decisions at the hearing. In his Amended Complaint, appellant claimed to be a Hawaiian or native Hawaiian,

> with recognized, though unsettled, interest in ceded lands which underlie much of the 'Aloha Tower' project area. . . . [He] claim[s] certain rights which involve the recognition and preservation of aspects of the land having to do with values of historic, religious, and cultural nature . . . and, . . . while . . . Hawaiians believe that development, if properly done, may be acceptable they wish to ascertain that their point of view, concerns and perspectives . . . are fully and seriously considered in relation to any proposal because theirs is the 'Host Culture' which must be preserved and respected as integral to the historic site—Pakaka.

After filing the lawsuit for injunctive relief, appellant filed a Notice of Pendency of Action (Notice), pursuant to Hawaii Revised Statutes (HRS) § 634–51 (1985). Appellee moved for, and the lower court granted, expungement of the Notice. This appeal followed.

## II.

In order to resolve this case, we look at both the purpose of the lis pendens statute, and the interest which appellant legitimately claims in the Aloha Tower Development Project. If appellant's interest is not one protected by the statute, then he has no standing to invoke its protective powers.

The relevant portion of the statute reads as follows:

> In any action concerning real property or affecting the title or the right of possession of real property, the plaintiff . . . may record in the bureau of conveyances a notice of the pendency of the action . . . .

HRS § 634–51. Prior construction of this statute in our appellate system provides the following statement of purpose:

> The purpose of the doctrine is to provide the courts with control over property involved in actions pending before them.

*Harada v. Ellis*, 4 Haw. App. 439, 443, 667 P.2d 834, 838 (1983). The *Harada* court upheld the expungement of a lis pendens where the rights of the party filing the lis pendens had been judicially extinguished.

Looking at a more historic context, we read that "the doctrine of lis pendens originated in the civil law and formed the basis of the common–law rule by virtue of which the judgment in a real action was regarded as overreaching any alienation made by the defendant during its pendency." 51 Am. Jur. 2d *Lis Pendens* § 1 (1970). Further, "where the doctrine of lis pendens would ordinarily apply to particular litigation as a result of the fact that title to, or possession of, or right of possession of, identified property is involved, the courts will generally apply the doctrine . . . both at law and in equity." *Id.* § 21. Although the doctrine may be applied to actions other than foreclosures, we agree with courts which restrict the application of the doctrine, in order to avoid its abuse. *See*

*Moseley v. Superior Court of Orange County*, 177 Cal. App. 3d 672, 678, 223 Cal. Rptr. 116, 119 (1986).

As appellant offers only the proof of interest as a Hawaiian or native Hawaiian, we look to legislative intent as to the legal affiliation between Hawaiians and the Aloha Tower Development. In *Trustees of OHA v. Yamasaki*, this court conceded that the land on which the Aloha Tower complex stands is part of the trust res which benefits the trust administered by the Office of Hawaiian Affairs (OHA) and its beneficiaries. 69 Haw. 154, 175, 737 P.2d 446, 458, *cert. denied*, 484 U.S. 898, 108 S. Ct. 234, 98 L. Ed. 2d 192 (1987). In that opinion, we noted that neither the legislative action in 1979, nor the auditor's study of December 1986, was the final word on OHA's appropriations under the trust. *Id.* at 165, 737 P.2d at 452. The case was brought by the OHA trustees to ask the court for declaratory relief and a determination that proceeds from various state projects be turned over to OHA. As the literal reading of the statute conflicted with the statute controlling the Department of Transportation, *inter alia*, we deferred to the legislature for clarification of what we deemed to be a non–justiciable issue. *Id.* at 175, 737 P.2d at 458.

The legislature acted in 1990 with Act 304 which laid out some particulars. That act gave no additional authority to the Trustees insofar as control of the Aloha Tower Development over what they had previously. That is, they have the power to "manage, invest, and administer the proceeds" and thus a right to a percentage of the income; the act did not confer claim to title or control over the state's decisions concerning use or development of the land. Act 304 has been codified as HRS § 10–5(1) (Supp. 1990). If the trustees have no more than that power, then appellant has no more than that power.

Appellant's remedy may lie in seeking injunctive relief, which appellant has done; however, he is not entitled to place a cloud on the subject property.

Affirmed.

*Jack F. Schweigert* for plaintiff–appellant.

*Hal Schofield* (*Robert A. Marks* with him on the brief), Deputy Attorneys General, for defendant–appellee.